

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00319-CV

**DAWN BENTLEY,**

**Appellant**

 **v.**

**CASEY DON SNODGRASS,**

**Appellee**

**From the 413th District Court**
**Johnson County, Texas**
**Trial Court No. DC-C201500694**

## MEMORANDUM OPINION

In two issues, appellant, Dawn Bentley, challenges a judgment rendered in favor

of appellee, Casey Don Snodgrass, involving a motor-vehicle collision. Because we

overrule both of Bentley's issues on appeal, we affirm the judgment of the trial court.

### I.     BACKGROUND

This dispute arises out of a motor-vehicle collision between Bentley and Snodgrass

that occurred on August 28, 2014, at the intersection of Alsbury Boulevard and Spring

Meadows Drive in Burleson, Texas. At the time of the incident, Snodgrass was approaching the intersection on Spring Meadows, while Bentley was driving on Alsbury. After stopping at the stop sign on Spring Meadows, Snodgrass proceeded into the intersection, where his vehicle was broadsided by the vehicle driven by Bentley. Bentley characterized Snodgrass's act of proceeding into the intersection at that time as negligent because he did not have the right of way.

Thereafter, Bentley filed suit, alleging that Snodgrass was negligent in pulling from the stop sign into the intersection when it was not safe to do so. The case was tried to a jury, and at the conclusion of the trial, the jury rendered its verdict in favor of Snodgrass, finding that his negligence, if any, did not proximately cause the accident. The trial court subsequently entered judgment on the jury's verdict. Bentley filed a motion for new trial, which was denied by the trial court. This appeal followed.

## II.    FACTUAL SUFFICIENCY OF THE EVIDENCE

In her first issue, Bentley argues that the jury's finding of no negligence as to Snodgrass is factually insufficient because she presented unrebutted evidence, including admissions by Snodgrass that he caused the collision by pulling into the intersection without having the right of way. We disagree.

### A.    Standard of Review

In a factual-sufficiency challenge, an appellate court must consider the weigh all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The verdict

should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would support a different result. *2900 Smith, Ltd. v. Constellation New Energy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment. *Id.*

## B.    Discussion

"It is the plaintiff's burden to prove specific acts of negligence on the part of the driver and that such negligence was a proximate cause of the accident." *Gomez v. Adame*, 940 S.W.2d 249, 252 (Tex. App.—San Antonio 1997, no writ) (citing *Smith v. Cent. Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex. App.—Houston [14th Dist.] 1989, writ denied)). The mere occurrence of a collision does not establish negligence as a matter of law. *Id.* (citing *Smith*, 774 S.W.2d at 412 ("The occurrence of an accident or collision is not of itself evidence of negligence.")); *see Madara v. Marshall*, 578 S.W.2d 787, 790 (Tex. Civ. App.— Houston [1st Dist.] 1978, writ ref'd n.r.e.). "Whether negligence and proximate cause have been proved by a preponderance of the evidence is within the jury's province to determine." *Gomez*, 940 S.W.2d at 252 (citing *Smith*, 774 S.W.2d at 412).

Here, Snodgrass testified that, at the time of the collision, he was on his way home from an open house at his three-year-old son's day care. His son was in a booster seat in the car at the time. In any event, Snodgrass stopped at a stop sign at the intersection of Alsbury and Spring Meadows and waited a long time for traffic to clear. He recalled looking both ways numerous times and proceeded into the intersection only when he thought it was clear. Snodgrass noted that he did not see Bentley's vehicle and that he would not have entered the intersection had he known a car was coming. Snodgrass denied eating, drinking, adjusting the radio, or consuming alcohol at or near the time of the accident, and he stated that he was driving with ordinary care when he entered the intersection. Snodgrass characterized the incident as "just an accident, not necessarily anybody was at fault."

However, in response to questioning by Bentley's counsel, Snodgrass admitted that this collision would not have occurred if he had not pulled from the stop sign when it was unsafe and that his actions were the sole cause of Bentley's damages and injuries. He further acknowledged that he failed to yield the right-of-way to Bentley and that Bentley did not do anything wrong to cause or contribute to the collision. And when asked who should be financially responsible for the collision, Snodgrass stated the following: "I mean, I mean, she hit me so it was my fault because I pulled out when I wasn't supposed to, so, yeah, you would say that I would be responsible for the actions that happened or for all that."

Bentley also proffered the testimony of Brian Dixon, an eyewitness to the collision. Dixon recounted that he was stopped on Spring Meadows behind Snodgrass. Dixon saw Snodgrass pull from the stop sign when it was unsafe and immediately into the path of Bentley's vehicle. Dixon recalled saying at the time of the collision, "From what I could see, it looked like she [Bentley] just didn't have an opportunity to stop." Dixon did not hear tires screeching or a car horn honking, nor could he determine how fast Bentley was traveling.

Bentley indicated that she was driving westward on Alsbury while going the speed limit and with the flow of traffic. However, on cross-examination, Bentley noted that she was driving the speed limit and that she thought the speed limit on Alsbury was forty miles per hour, though she conceded that the police report stated that the speed limit on Alsbury was actually thirty-five miles per hour. In any event, Bentley was in the left lane of the two westbound traffic lanes, and there was no traffic-control device facing her as she was driving through the intersection. Bentley then saw Snodgrass pull out in front of her, and she "hit [her] brake, and the next thing I know we're hitting. I hit him." Bentley did not see Snodgrass's vehicle "until it was too late."

In addition to the foregoing, Bentley tendered Plaintiff's Exhibit 29, which is the police report corresponding with the collision. In this report, Burleson Police Officer Cody Austin indicated the following:

> Unit #1 (Snodgrass) was stopped at the stop sign in the 800 Blk of Spring Meadows Dr. Unit # 2 (Bentley) was traveling southwest in the 500 Blk of

NE Alsbury Blvd in the inside lane of traffic. Unit #1 Failed to Yield the Right of Way, pulling onto the 500 Blk of NE Alsbury Blvd., to head northeast. At this time[,] Unit #2 struck Unit #1 in the left side.

Despite the aforementioned evidence presented by Bentley, there was credible evidence before the jury upon which its decision rests. Specifically, Snodgrass testified that he stopped at the stop sign at the intersection of Alsbury and Spring Meadows, looked both directions on numerous occasions, and entered the intersection only when he believed it was clear. The record contains no evidence that Snodgrass ran the stop sign; that Snodgrass was distracted or otherwise was not paying attention when he entered the intersection; or that he even saw Bentley's vehicle before entering the intersection. Instead, the facts established the existence of an accident, not specific acts of negligence on the part of either party. *See Gomez*, 940 S.W.2d at 252 (concluding that the plaintiff failed to establish negligence when the record showed that the defendant stopped at a stop sign, looked in both directions, and entered what she thought was a clear intersection). Therefore, based on the evidence, we cannot say that the jury erred in failing to conclude that Snodgrass was negligent as a matter of law. *See id.*

Nevertheless, Bentley relies heavily on Snodgrass's purported admissions that he failed to yield the right of way and that he was financially responsible for the damages caused by the collision, as well as the police report, to establish that Snodgrass was negligent by failing to yield the right of way. First, we note that the failure to yield the right of way does not, in and of itself, establish negligence. *See id.; see also Madara*, 578

S.W.2d at 790 ("However, if the driver intending to make a left turn misjudges the speed of the approaching vehicle or its distance from the intersection, this does not necessarily establish a want of due care on his part. Thus, in the case at bar[,] it was the plaintiff's burden to prove the defendant's negligence upon the common law standard of whether he acted as a reasonably prudent person under the circumstances existing at the time of the occurrence." (internal citations omitted)); *Dedear v. James*, 184 S.W.2d 319, 321 (Tex. Civ. App.—Austin 1944, writ ref'd w.o.m.) ("The foregoing facts sustain the jury finding that while the truck driver failed to keep a proper lookout and failed to yield the right of way to the approaching automobile, that neither of such acts was negligence. The settled rule is that negligence is generally a question of fact for the jury to determine.").

Second, a review of the record demonstrates conflicts in the evidence, which were within the province of the jury to resolve. *See O'Connor v. Miller*, 127 S.W.3d 249, 254 (Tex. App.—Waco 2003, pet. denied) (noting that it is within the province of the factfinder to determine the credibility of the witnesses and the weight to be given their testimony). Moreover, the jury was entitled to believe one witness and disbelieve another witness, may resolve inconsistencies in the testimony of a witness, and it may accept lay testimony over that of experts. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Therefore, we may not pass upon a witness's credibility or substitute our judgment for that of the jury, even if the evidence might clearly support a different result. *See Maritime Overseas*

*Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986)).

Accordingly, based on the foregoing, we cannot conclude that the jury's finding that Snodgrass's negligence, if any, was not the proximate cause of the collision is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176; *see also In re Ybarra*, No. 04-17-00245-CV, 2017 Tex. App. LEXIS 9700, at *14 (Tex. App.—San Antonio Oct. 18, 2017, orig. proceeding) (concluding that, in a rear-end collision case, the trial court erred in granting a new trial and setting aside the jury's no-negligence finding because the "jury chose to believe Ybarra's version of the events leading to the collision, and determined that Ybarra had not failed to use ordinary care. That determination was within the jury's province. We are not free to disregard the jury's conclusion, and neither was the trial judge"); *Laday v. Pedraza*, No. 14-13-00638-CV, 2015 Tex. App. LEXIS 1232, at **5-7 (Tex. App.—Houston [14th Dist.] Feb. 10, 2015, pet. denied) (mem. op.) (rejecting a factual-sufficiency issue in a rear-end-collision case based on testimony by the defendant that he failed to stop on time and that the collision was an accident and testimony by the plaintiff that he did not see the defendant's truck before the collision, nor did he hear brakes or tires squealing before the collision); *Gaskey v. One Source Sec. & Found.*, No. 14-07-00850-CV, 2009 Tex. App. LEXIS 4708, at **9-14 (Tex. App.—Houston [14th Dist.] June 18, 2009, no pet.) (mem. op.) (affirming a no-negligence finding despite the defendant's admissions that he could have prevented the

accident, that he was partly at fault, and that he was following too closely); *Zelbst v. Harkins*, No. 10-07-00293-CV, 2008 Tex. App. LEXIS 2705, at **3-5 (Tex. App.—Waco May 21, 2008, no pet.) (mem. op.). We therefore overrule Bentley's first issue.

### III.    MOTION FOR NEW TRIAL

In her second issue, Bentley contends that the trial court erred by allowing the judgment on the jury's verdict to become final and for denying her motion for new trial without a hearing. However, neither in her appellant's brief nor in her reply brief did Bentley provide argument or authorities in support of this issue. Accordingly, we hold that this issue is inadequately briefed and, thus, waived. *See* TEX. R. APP. P. 38.1(i); *see also Tesoro Petroleum Corp. v. Nabors Drilling U.S.A.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (noting that Texas Rule of Appellate Procedure 38 requires a party to provide the reviewing court with "a succinct, clear, and accurate statement of the argument made in the body of the brief"). We overrule Bentley's second issue.

### IV.    CONCLUSION

Having overruled both of Bentley's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed September 26, 2018
[CV06]

